UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------------------------------

TRUSTEES OF THE DISTRICT COUNCIL 9 PAINTING )
INDUSTRY INSURANCE AND ANNUITY FUNDS, )
                                      )     Index No.: 19-CIV-2197
                  Plaintiffs, )
                                      )     COMPLAINT
      -against- )
                                      )
COSMOPOLITAN USA CORPORATION a/k/a )
COSMOPOLITAN USA and COSMOPOLITAN INTERIOR )
NY CORPORATION a/k/a COSMOPOLITAN INTERIOR )
and JOEL FRIEDMAN AND MOSHE GOLD, )
                                      )
                   Defendants. )

--------------------------------------------------------------------------------------------------------

Plaintiffs, Trustees of the District Council 9 Painting Industry Insurance and Annuity Funds (hereinafter referred to as the "Funds") by their attorneys Barnes, Iaccarino, & Shepherd, LLP allege as follows:

## NATURE OF THE ACTION AND JURISDICTION AND VENUE

1.    This is a civil action based on the provisions of Section 301 of the Labor Management Relations Act of 1947 (hereinafter referred to as the "Taft-Hartley Act") 29 U.S.C. Section 185, and on Section 502(a)(3) and Section 515 of the Employee Retirement Income Security Act, as amended (hereinafter referred to as "ERISA") (29 U.S.C. Section 1132(a)(3) and 29 U.S.C. 1145).

2.    Jurisdiction is conferred upon this Court by Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185) and Sections 502(e)(1) and 502(f) of ERISA (29 U.S.C. Sections 1132(e)(1) and 1132(f)) and 28 U.S.C. Section 1367; and derivative jurisdiction is contained in 28 U.S.C. Sections 1331 and 1337.

3.     Venue properly lies in this District under the provisions of 502(e)(2) of ERISA (29 U.S.C. Section 1132(e)(2)) and Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185) and 28 U.S.C. Section 1391(b).

4.     This action is brought by the respective Trustees of the Funds in their fiduciary capacities for monetary damages and other equitable relief under ERISA and for breach of a labor contract to secure performance by an Employer and its related Company of specific statutory and contractual obligations to submit the required monetary contributions, and/or reports to the Funds and cooperate in the conduct of an audit.  This action also involves the breach of a contract by a Surety to remit the required monetary contributions and late charges and/or interest to the Funds. This Complaint alleges that by failing, refusing or neglecting to pay and submit the required monetary contributions and reports to the Funds when due, Defendants violated their Trade Agreement, the respective trust agreements of the Funds, the Surety Bond, the Taft-Hartley Act, and ERISA.

## PARTIES

5.     The Plaintiffs' Trustees are, at all relevant times, the fiduciaries of jointly administered, multi-employer, labor management trust funds as defined by Section 3(21)(A) and Section 502(a)(3) of ERISA (29 U.S.C. Sections 1002(21)(A) and 1132(a)(3)).  The Funds are established and maintained by the D.C. 9 International Union of Painters and Allied Trades (hereinafter referred to as the "Union") and various Employers pursuant to the terms of the Trade Agreements in accordance with Section 302(c)(5)(1) and (c)(6) of the Taft-Hartley Act (29 U.S.C. Section 186 (c)(5) and (c)(6)).  The Funds are employee benefit plans within the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. Sections 1002 3(1), 3(2), 3(3) and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. Sections 1002(37) and 1145).  Plaintiffs are Trustees of

the Funds and the "plan sponsor" within the meaning of Section (3)(16)(B)(iii) of ERISA (29 U.S.C.

Section 1002(16)(B)(iii)).

6.      The Funds provide fringe benefits to eligible employees, retirees and their dependents

on whose behalf the Defendants are required to contribute to the Funds pursuant to its Trade

Agreement (hereinafter referred to as the "Agreement") between the Defendants and the Union.  The

Funds are third party beneficiaries to the Trade Agreements and are authorized to collect contributions

on behalf of the employees of the Defendants, and the Plaintiffs' Trustees as fiduciaries of the Funds

are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29

U.S.C. Section 1132(d)(1)) and are obligated to bring actions to enforce the provisions of the

Agreement and the respective trust agreements of the Funds that concern the protection of employee

benefit rights.

7.      The Funds' maintain an office for the transaction of business at 595 West Hartsdale

Avenue, White Plains, NY 10607, in the County of Westchester.

8.      Upon information and belief, the Defendant, Cosmopolitan USA Corporation a/k/a

Cosmopolitan USA (hereinafter referred to as "Cosmopolitan USA" or "Corporate Defendant") at all

relevant times was and is an "employer" within the meaning of Sections 3(5), (11) and (12) and

Section 515 of ERISA (29 U.S.C. Sections 1002 (5)(11) and (12) and Section 1145) and was and still

is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-

Hartley Act (29 U.S.C. Section 185).  Cosmopolitan USA is or was an employer of employees covered

by employee benefit plans and multiemployer plans maintained pursuant to Trade Agreements, all as

defined in ERISA 3(3) and (37), and are obligated to make contributions to the Plans in accordance

with ERISA Section 515, 29 U.S.C. Section 1145.

9.      Upon information and belief, Cosmopolitan USA was and is a for profit domestic corporation duly organized and existing pursuant to the laws of the State of New York and doing business in the State of New York with their principal place of business at 63 Flushing Avenue, Building #3, Brooklyn, NY 11205, in the County of Kings. Cosmopolitan USA was formerly located at 315 West 39th Street, New York, New York 10018 in the County of New York.

10.     Upon information and belief, the Defendant, Cosmopolitan Interior NY Corporation a/k/a Cosmopolitan Interior (hereinafter referred to as "Cosmopolitan Interior" or "Corporate Defendant") at all relevant times was and is an "employer" within the meaning of Sections 3(5), (11) and (12) and Section 515 of ERISA (29 U.S.C. Sections 1002 (5)(11) and (12) and Section 1145) and was and still is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185).  Cosmopolitan Interior is or was an employer of employees covered by employee benefit plans and multiemployer plans maintained pursuant to Trade Agreements, all as defined in ERISA 3(3) and (37), and are obligated to make contributions to the Plans in accordance with ERISA Section 515, 29 U.S.C. Section 1145.

11.     Upon information and belief, Cosmopolitan Interior was and is a for profit domestic corporation duly organized and existing pursuant to the laws of the State of New York with their principal place of business at 315 West 39th Street, New York, NY 10018, in the County of New York.

12.     Upon information and belief, Defendant, Moshe Gold, is an owner, officer, director and/or managing agent of the corporate defendants and resides at 26 Heyward Street, Brooklyn, New York 11249, in the County of Kings.

13.     Upon information and belief, Defendant, Joel Friedman, is an owner, officer, director and/or managing agent of the corporate defendants, whose address is unknown at this time.

14.     Cosmopolitan USA and Cosmopolitan Interior are parties in interest with

respect to the Plans as defined in ERISA Section 3(14)(H) (29 U.S.C. Section 1002(14)(H)) and

Defendants Cosmopolitan USA and Cosmopolitan Interior act directly as an employer and/or indirectly

in the interest of an employer in relation to the Plans, all as defined in ERISA Section 3(5) (29 U.S.C.

Section 1002(5)).

15.     To the extent that Cosmopolitan USA and Cosmopolitan Interior exercised authority

and/or control with respect to the management or disposition of assets of an ERISA covered plan, it is

a fiduciary within the meaning of ERISA Section 3(21)(A) (29 U.S.C. Section 1002(21)(A).

## BACKGROUND

### A.  Trade Agreement between Cosmopolitan USA and the Union

16.     Upon information and belief and at all relevant times, Joel Friedman on behalf of

Cosmopolitan USA and individually executed an Agreement with the Union, with respect to which the

Funds are third-party beneficiaries.

17.     The Agreement requires that Cosmopolitan USA, among other things, remit fringe

benefit contributions to the Funds in a timely fashion for work performed within the trade and

geographical jurisdiction of the Union. The Agreement also obligates Cosmopolitan USA to report

how many hours were worked by its employees within the jurisdiction of the Union and gives the

Funds the right to audit Cosmopolitan USA.

18.     The Agreement further required Cosmopolitan USA to submit reports to the Funds and

to furnish its books and records when requested by the Funds for the purpose of conducting an audit to

ensure compliance with required benefit fund contributions.

19.     The Agreement and the Trust Fund Policy for Delinquent Contributions (hereinafter

referred to as the "Policy") also requires Cosmopolitan USA to submit the fringe benefit contributions

on a weekly basis.  Failure by an Employer to remit fringe benefit contributions on a timely basis shall

result in interest being assessed at the rate of the two (2%) above prime per annum, which shall be calculated based upon the sum of all fringe benefit contributions due. In addition the Agreement and Policy state that liquidated shall also be assessed at the rate 20% of the principal contributions.

**B. Cosmopolitan USA and Cosmopolitan Interior are both bound by the Trade Agreement and are alter egos and/or single employer and a continuing enterprise**

20.     Cosmopolitan USA and Cosmopolitan Interior perform the same type of work in the greater New York area.

21.     Upon information and belief, Cosmopolitan USA and Cosmopolitan Interior have had and/or currently have affiliated business enterprises at all times relevant to this action.

22.     Upon information and belief, Cosmopolitan USA and Cosmopolitan Interior have interrelated operations, common ownership and management, centralized control of labor relations, share assets, transfers of monies, offices, payroll, similar or same business purpose, same operations, same bookkeeper/controller, office employees, equipment, customers, employees, and performed work within the trade and geographical jurisdictions of the Union.  Accordingly, Cosmopolitan USA and Cosmopolitan Interior constitute a single employer and/or are alter egos and their employees constitute a single bargaining unit, and are both bound to the Agreement.

23.     Upon information and belief the defendant corporations are owned, operated, and controlled by the same owner or "owner group", and each provide mutually supportive services to the substantial advantage of the other such that each is operationally interdependent of each other and, therefore may be treated as a single enterprise and/or alter egos.

24.     Upon information and belief Cosmopolitan USA and Cosmopolitan Interior aided Cosmopolitan USA in evading its contractual obligations to Plaintiffs.  More specifically, but not limited to, Cosmopolitan USA subcontracted most if not all its work to Cosmopolitan Interior.

25.     Upon information and belief, Cosmopolitan Interior aided Cosmopolitan USA by performing work within the trade and geographic jurisdiction of the Union without conforming to the terms of the Agreement.  Accordingly, Defendants Cosmopolitan Interior is an alter ego and/or single employer of Cosmopolitan USA and is bound by the terms of the Agreement.

26.     Upon information and belief, Cosmopolitan USA has an ownership, stock, equitable or managerial interest in Defendant Cosmopolitan Interior.

27.     Upon information and belief, Moshe Gold is an officer and/or owner for Cosmopolitan Interior and Cosmopolitan USA and had and/or still has authority to execute documents on behalf of both companies.

28.     Further, by the terms of the Agreement, any company which performs bargaining unit work and in which any signed employer, or any of the owners, have an ownership interest or control, are bound by the Agreement.

29.     Article XV Section 5 of the Agreement provides, in pertinent part:

> Any Employer who shall perform work in a joint venture or through a subsidiary or affiliated company shall be responsible and liable for the compliance with the terms of this Agreement by such joint venture or subsidiary or affiliated company.

> Additionally, Article XXI Section 1 (d) of the Agreement states, in pertinent part: Where the Trustees determine that an Employer is being operated in the name of a nominee, family member, successor entity or alter ego of an individual actually controlling the Employer, the Trustees may consider any default of the obligations set forth in such Articles to be the default of said controlling individual.

30.     Upon information and belief, at all times material hereto, Cosmopolitan USA has ownership interest and/or control in Cosmopolitan Interior and share employees and at some time both companies were located at the same address, that is, 315 West 39th Street, New York, NY 10018

31.     Cosmopolitan USA and Cosmopolitan Interior have not dealt at arms-length with each other.

32.     Large sums of money were frequently and regularly shifted between Cosmopolitan USA and Cosmopolitan Interior.  Upon information and belief there were no loan agreements.

33.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior are alter egos of and/or a single employer with each other and are thus both parties to the Agreement, bound by their terms and jointly and severally liable for each other's obligations under the Agreement.

## CAUSES FOR RELIEF

### AS AND FOR A FIRST CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF
### CONTRACT AGAINST COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR FOR
### FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS)

34.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "33" of this Complaint, as if fully set forth herein.

35.     The Agreement requires employers to submit contribution reports setting forth the hours and the period that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the Agreement for all work performed by its employees covered by the Agreement and to purchase benefit stamps or contributions in a timely fashion in accordance with the Agreement.

36.     Upon information and belief, as a result of work performed by the individual employees of Cosmopolitan USA, pursuant to the Agreement, there may be due and owing to the Funds from the Defendants contribution reports and fringe benefit contributions.

37.     Cosmopolitan USA and Cosmopolitan Interior have failed and refused to remit to the Funds those fringe benefit contributions due and owing for the period June 19, 2018 through July 24, 2018 in the minimum sum of $59,326.81. This delinquent amount is based upon remittance reports submitted by Cosmopolitan USA and Shop Steward Reports.

38.     The failure, refusal or neglect of Cosmopolitan USA and Cosmopolitan Interior to remit the contributions to Funds is a violation of the terms of the Agreement with the Union with respect to which the Funds are third party beneficiaries.

39.     Pursuant to the Agreement and Policy for Delinquent Contributions, upon the failure to remit payment of fringe benefit contributions same shall be subject to interest, liquidated damages, reasonable cost of expenses including attorneys' fees, court costs and disbursements.

40.     Accordingly, pursuant to the Agreement and Policy, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds in the minimum principal amount of $59,326.81 in unpaid contributions, plus interest, liquidated damages, attorneys' fees, court costs and disbursements.

## AS AND FOR A SECOND CLAIM FOR RELIEF
## (FUNDS' CLAIM FOR BREACH OF ERISA OBLIGATIONS BY COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS)

41.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "40" of this Amended Complaint as if fully set forth at length herein.

42.     Section 515 of ERISA, (29 U.S.C. Section 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of the Agreement.

43.     Cosmopolitan USA and Cosmopolitan Interior have failed to pay the fringe benefit contributions to Plaintiffs owed as a result of work performed by individual employees of Cosmopolitan USA.  Such failure to make timely payment constitutes a violation of Section 515 of ERISA (29 U.S.C. Section 1145).

44.     Section 502 of ERISA (29 U.S.C. Section 1132) provides that upon a finding of an employer violation of Section 515 of ERISA (29 U.S.C. Section 1145) which requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining

agreements, the Court shall award payment to a plaintiffs' fund of the unpaid fringe benefit

contributions, plus statutory damages and interest on the unpaid principal amount due, together with

auditors' fees, attorneys' fees and costs and disbursements incurred in the action.

45.     The failure to pay has injured the Funds by delaying the investment of contributions and

causing unnecessary administrative costs for the Funds and has injured the participants and

beneficiaries and other contributing employers of the benefit plan in the form of lower benefits and

higher contribution amounts.

46.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds

pursuant to the Agreement concerning the payment of fringe benefit contributions under Sections 502

and 515 of ERISA (29 U.S.C. Sections 1132 and 1145) due to the failure to pay contributions when

they are due.

47.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds in

the minimum principal amount of $59,326.81, plus interest, liquidated damages, attorneys' fees,

court costs and disbursements incurred in this action pursuant to Section 502 of ERISA (29

U.S.C. Section 1132).

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF
### CONTRACT AGAINST COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR FOR
### FAILURE TO TIMELY PAY FRINGE BENEFIT CONTRIBUTIONS)

48.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in

Paragraphs "1" through "47" of this Amended Complaint as if fully set forth at length herein.

49.     The Agreement and Policy requires the Defendants to submit contribution reports

setting forth the hours and the period that each of its employees worked and the amount of

contributions due pursuant to the rate schedules set forth in the Agreement for all work performed by

its employees covered by the Agreement and to submit the contributions in a timely fashion in accordance with the Agreement.

50. Upon information and belief, as a result of work performed by the individual employees of Cosmopolitan USA pursuant to the Agreement, Cosmopolitan USA submitted payment for contributions, however, the contribution payments were remitted in an untimely fashion.

51. Cosmopolitan USA and Cosmopolitan Interior have failed and refused to remit to the Funds for the period May 30, 2017 through June 12, 2018 the late charges due and owing under the Agreement in the amount of $200,604.17.

52. Cosmopolitan USA and Cosmopolitan Interior's failure, refusal or neglect to remit the late charges to the Funds constitutes a violation of the Agreement and the Policy wherein the Funds are third party beneficiaries.

53. Pursuant to the Agreement and Policy upon Cosmopolitan USA and Cosmopolitan Interior's failure to remit benefit contributions in a timely fashion and failure to remit the late charges to the Funds' office, Cosmopolitan USA and Cosmopolitan Interior are obligated to pay late charges that consists of interest and liquidated damages. Article XXII Section 2(a) and (b) of the Agreement states, in pertinent part, "that if the required Art. XX Fringe Benefit Contributions shall become delinquent, the amount of damage resulting from any such delinquency shall be, by way of liquidated damages, and not as a penalty, a sum equivalent to 10% of the total Art. XX Fringe Benefit Contributions required pursuant to this Trade Agreement, for each failure to pay in full with the time provided…..in addition to the amount assessed as liquidated damages, interest shall be added to the obligation…calculated monthly at the annual rate of the prime rate plus 2.0%, which shall be calculated based upon the sum of all Art. XX Fringe Benefit Contributions due for the period…."

54.     In addition, Article XXII Section 2(c) of the Agreement provides that should it become necessary to proceed with legal action to collect the late charges, Cosmopolitan USA and Cosmopolitan Interior shall be responsible for attorneys' fees court costs and disbursements incurred in collecting the late charges.

55.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds for unpaid late charges for the period May 30, 2017 through June 12, 2018 in the amount of $200,604.17, plus court costs and disbursements and attorneys' fees.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**(FUNDS' CLAIM FOR BREACH OF**
**CONTRACT AGAINST COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR FOR**
**FAILURE TO SUBMIT TO AN AUDIT)**

56.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "55" of this Amended Complaint as if fully set forth at length herein.

57.     Pursuant to the Agreement and Policy, Cosmopolitan USA and Cosmopolitan Interior are required to permit and cooperate with the Funds and/or their designated agents or representatives in an audit of Cosmopolitan USA and Cosmopolitan Interior's financial records for the purpose of ascertaining whether the full and accurate amount of benefit contributions have been made to the Funds as required under the Agreement and Policy.

58.     Cosmopolitan USA and Cosmopolitan Interior have failed and refused to allow an audit by the Funds for the effective period of the Agreement.

59.     Cosmopolitan USA and Cosmopolitan Interior's failure, refusal or neglect to allow an audit constitutes a violation of the Agreement and Policy, wherein the Funds are third party beneficiaries.

60.     Plaintiffs brought this action in part, to compel the audit of Cosmopolitan USA and Cosmopolitan Interior's books and records and pursuant to the Agreement to collect the benefit

contributions that may be found to be due and owing, plus interest, liquidated damages, auditors' fees, attorneys' fees and court costs incurred by the Funds.

61.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior must permit and cooperate in the conduct of an audit by the Plaintiffs and is liable to the Funds for benefit contributions found due and owing pursuant to an audit, plus liquidated damages, interest, auditors' fees, and attorneys' fees in an amount to be determined by the audit, plus court costs incurred by the Funds..

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF ERISA OBLIGATIONS
### BY COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR DUE TO THE FAILURE TO
### SUBMIT TO AN AUDIT)

62.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "61" of this Amended Complaint as if fully set forth at length herein.

63.     In accordance with ERISA Section 209, 29 U.S.C. 1059, Cosmopolitan USA and Cosmopolitan Interior are responsible for maintaining the books and records sufficient to allow the Funds to conduct an audit and its failure to do so constitutes a violation of ERISA.

64.     Section 515 of ERISA, (29 U.S.C. Section 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of the Trade Agreement.

65.     An employer who has failed to cooperate with an audit of its books and records and to pay or timely pay the fringe benefit contributions and/or to submit the contribution reports owed as a result of work performed by individual employees of the employer, constitutes a violation of Section 515 of ERISA (29 U.S.C. Section 1145).

66.     Section 502 of ERISA (29 U.S.C. Section 1132) provides that upon a finding of an employer violation of Section 515 of ERISA (29 U.S.C. Section 1145) which requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining

agreements, the Court shall award payment to a plaintiff's fund the unpaid fringe benefit contributions, plus liquidated damages and interest on the unpaid principal amount due, together with auditors' fees, attorneys' fees, costs and disbursements incurred in the action.

67.     The failure to permit an audit has injured the Funds, if contributions are owed, by delaying the investment of contributions that are found due pursuant to the audit and causing unnecessary administrative costs for the Funds and has injured the participants and beneficiaries and other contributing employers of the benefit plan in the form of lower benefits and higher contribution amounts.

68.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds under the Agreement and Policy concerning the payment of fringe benefit contributions and under Sections 209, 502 and 515 of ERISA (29 U.S.C. Sections 1059, 1132 and 1145) due to the failure to permit an audit of Cosmopolitan USA and Cosmopolitan Interior's books and records and pay the contributions that may be found due and owing.

69.     Accordingly, Cosmopolitan USA and Cosmopolitan Interior must permit and cooperate in the conduct of an audit and Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds in an amount to be determined by the audit, which shall include liquidated damages, interest, auditors' fees and attorneys' fees pursuant to Section 502 of ERISA (29 U.S.C. Section 1132) and court cost incurred.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**(FUNDS' CLAIM FOR BREACH OF ERISA OBLIGATIONS**
**BY COSMOPOLITAN USA AND COSMOPOLITAN INTERIOR DUE TO THE FAILURE TO**
**REMIT FRINGE BENEFIT CONTRIBUTIONS)**

70.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "69" of this Amended Complaint as if fully set forth at length herein.

71.     Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit, 29 U.S.C. Section 1106(a)(1)(A) and (B). Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. Section 1106(b)(1) - (3).

72.     At all times relevant herein, Cosmopolitan USA and Cosmopolitan Interior were a party in interest with respect to the Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A),(C) and (E), 29 U.S.C. Section 1002(14)(A), and (E).

73.     By withholding the contributions from the Funds, Cosmopolitan USA and Cosmopolitan Interior dealt with plan assets in its own interest and/or exchanged property or extended credit from plan assets for its own personal use and benefit in violation of ERISA Sections 406(a) and (b), 29 U.S.C. Section 1106(a) and (b).

74.     By retaining assets of the Funds for their own use, Cosmopolitan USA and Cosmopolitan Interior as a fiduciary has breached the fiduciary obligations owed to the Funds and committed prohibited transactions within the meaning of Part 4 of Subchapter I of Chapter 18 of Title 29 of the United States Code, 29 U.S.C. Section 1101 *et seq.*

75.     Cosmopolitan USA and Cosmopolitan Interior are singly and jointly liable to make restitution to the Funds in the amounts as are set forth herein, no part of which has been paid.

76.     As a result of the breaches of fiduciary duty described above, Cosmopolitan USA and Cosmopolitan Interior are liable to the Funds for the amounts set forth herein, which include contributions, interest, liquidated damages, and the costs and fees of collection.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF AGAINST MOSHE GOLD AND JOEL FRIEDMAN FOR BREACH OF CONTRACT

77.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "76" of this Complaint as if set forth at length herein.

78.     Upon information and belief, defendant Joel Friedman executed the Agreement with the Union and defendant Moshe Gold along with Joel Friedman had actual control of the defendant Cosmopolitan USA.

79.     Article XXI Section 1(d) of the Agreement states, in pertinent part:

> the failure of an Employer to make fringe benefit contributions or pay interest, liquidated damages or fees related thereto as provided…shall be attributed to any officer, stockholder, partner or proprietor in actual control of said Employer, and execution of this Trade Agreement by any such person shall bind said person individually to the terms and conditions set forth herein A default in payment of any fringe benefit contributions or interest, liquidated damages or fees related thereto due pursuant to this Article…shall follow said officer, stockholder, partner, and/or proprietor into any succeeding enterprise entered into by said person.

80.     Cosmopolitan USA has failed and refused to remit to the Funds those fringe benefit contributions due and owing for the period June 19, 2018 through July 24, 2018 in the minimum sum of $59,326.81.

81.     Cosmopolitan USA has failed and refused to remit to the Funds the unpaid late charges (interest and liquidated damages) for the period May 30, 2017 through June 12, 2018 in the amount of $200,604.17.

82.     The failure, refusal or neglect of Cosmopolitan USA to remit the contributions and interest and liquidated damages to the Funds is a violation of the terms of the Agreement with the Union and in accordance with the Agreement shall also be attributed to defendants Moshe Gold and Joel Friedman.

83.     Accordingly, pursuant to the Agreement, defendants Moshe Gold and Joel Friedman are liable to the Funds in the minimum principal amount of $59,326.81 in unpaid contributions, plus interest, liquidated damages, attorneys' fees, court costs and disbursements and unpaid late charges for the period May 30, 2017 through June 12, 2018 in the amount of $200,604.17.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF AGAINST MOSHE GOLD AND JOEL FRIEDMAN UNDER ERISA SECTION 404

84.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "83" of this Complaint as if set forth at length herein.

85.     Upon information and belief, defendants Moshe Gold and Joel Friedman executed Agreements with the Union, with respect to which plaintiff Funds are third party beneficiaries.

86.     Upon information and belief, defendants Moshe Gold and Joel Friedman are officers and owners of defendants Cosmopolitan USA and Cosmopolitan Interior and have been acting with authority and control with respect to the obligations owed under the terms of the Agreement.

87.     At all relevant times, defendants Moshe Gold and Joel Friedman have had complete and unfettered authority over the management, finances and operations of Cosmopolitan USA and Cosmopolitan Interior.

88.     At all relevant times, Moshe Gold and Joel Friedman determined which creditor to pay and when.

89.     ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" 29 U.S.C. Section 1104 (a)(1)(A).

90.     ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and

instruments" are consistent with federal law, 29 U.S.C. Section 1104(a)(1)(D).

91.     As a result of the work performed by Defendants under the Agreement, Defendants, upon information and belief, received substantial sums of money related to the work performed, which intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

92.     By exercising control over assets belonging to the Funds, Defendants Moshe Gold and Joel Friedman are fiduciaries with respect to the Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. Section 1002(21)(A).  The Individual Defendants are fiduciaries with respect to the plan assets that they failed to timely pay into the Funds.

93.     Upon information and belief, defendants Moshe Gold and Joel Friedman owned, controlled and dominated the affairs of the Corporate Defendants and carried on the business of the Corporate Defendants for their own personal ends.

94.     At all relevant times, defendants Moshe Gold and Joel Friedman have had complete and unfettered authority over the finances and operations of Cosmopolitan USA and Cosmopolitan Interior.

95.     Upon information and belief, Defendants Moshe Gold and Joel Friedman had managerial discretion and control over Corporate Defendants, made all decisions on behalf of the Corporate Defendants, signed contracts governing the Corporate Defendants, signed bank checks for the Corporate Defendants, and made all decisions concerning payments by the Corporate Defendants.

96.     Upon information and belief, Defendants Moshe Gold and Joel Friedman determined which creditors the Corporate Defendants would pay and when, determined when the Plaintiff Funds would be paid, determined how much money would be paid to the Plaintiff Funds, and exercised control over money due and owing to the Plaintiff Funds.

97.     Upon information and belief, Defendants Moshe Gold and Joel Friedman commingled

assets of the Plaintiffs' Funds with the Corporate Defendant's general assets and used the Plaintiff

Funds' assets to pay other creditors of the Corporate Defendant rather than forwarding the assets to the

Plaintiff Funds.

98.     By failing and refusing to turn over to the Plaintiff Funds the contributions, which are

property of the Funds, the Corporate Defendants and Defendants Moshe Gold and Joel Friedman have

converted the property of the Funds.

99.     Upon information and belief, while retaining Plaintiff Funds' contributions, Defendants

Moshe Gold and Joel Friedman diverted the Plaintiff Funds' assets for their own personal use.

100.     By withholding contributions from Plaintiffs' Plans, Defendants are individually and

personally liable for the violations of ERISA Section 404 described herein, 29 U.S.C. Section 1104.

101.     By withholding the contributions from the Funds, Defendants Moshe Gold and Joel

Friedman received and retained for their own personal use and benefit, monies which were rightfully

assets of the Funds in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. Section 1104(a)(1)(A).

102.     By withholding the contributions from the Plaintiff Funds, Defendants Moshe Gold and

Joel Friedman failed to abide by the instruments governing the Funds in violation of ERISA Section

404(a)(1)(D), 29 U.S.C. Section 1104(a)(1)(D).

103.     As a result of the breaches of fiduciary duty described above, Defendants Moshe Gold

and Joel Friedman are liable to the Funds for the amounts set forth herein which include contributions,

interest, liquidated damages and the costs and fees of collection and the Defendants must singly and

jointly disgorge to the Funds said converted assets.

## AS AND FOR A NINTH CLAIM FOR RELIEF AGAINST MOSHE GOLD AND JOEL FRIEDMAN UNDER ERISA SECTION 406

104.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "103" of this Complaint as if fully set forth at length herein.

105.    Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit, 29 U.S.C. Section 1106(a)(1)(A) and (B). Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. Section 1106(b)(1) - (3).

106.    At all times relevant herein, Defendants were parties in interest with respect to the Plaintiff Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A),(C) and (E), 29 U.S.C. Section 1002(14)(A), and (E).

107.    Upon information and belief, Moshe Gold and Joel Friedman consistently exercised control over the Cosmopolitan USA and Cosmopolitan Interior for their personal accounts and are personally liable for both their accrued and any current obligations.

108.    By withholding the contributions from the Plaintiff Funds, Defendants dealt with plan assets in their own interest and/or exchanged property or extended credit from plan assets for their own personal use and benefit in violation of ERISA Sections 406(a) and (b), 29 U.S.C. Section 1106(a) and (b).

109.    By retaining assets of the Plaintiffs' Funds for their own use, said Defendants as fiduciaries have breached the fiduciary obligations owed to the Plaintiff Funds and committed prohibited transactions within the meaning of Part 4 of Subchapter I of Chapter 18 of Title 29 of the United States Code, 29 U.S.C. Section 1101 *et seq.*

110.     The Defendants are singly and jointly and individually liable to make restitution to the Funds in the amounts as are set forth herein, no part of which has been paid.

111.     As a result of the breaches of fiduciary duty described above, Defendants are liable to the Plaintiff Funds for the amounts set forth herein which include contributions, interest, liquidated damages, and the costs and fees of collection.

## AS AND FOR A TENTH CLAIM FOR RELIEF AGAINST MOSHE GOLD AND JOEL FRIEDMAN PURSUANT TO THE COLLECTIVE BARGAINING AGREEMENT

112.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "111" of this Complaint as if fully set forth at length herein.

113.     Article XXI of the Agreement states, in pertinent part, "Where the Trustees determine that an Employer is being operated in the name of a nominee, family member, successor entity or alter ego of an individual actually controlling the Employer, the Trustees may consider any default of the obligations set forth in such Articles to be the default of said controlling individual.

114.     Upon information and belief, Defendant Corporations are alter egos and or single Employers.  Accordingly the default of the Defendant Corporations are the default of Defendants Moshe Gold and Joel Friedman and are therefore liable for the amounts set forth herein, which include contributions, interest, liquidated damages, and the costs and fees of collection.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

115.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs "1" through "114" of this Complaint as if set forth at length herein.

116.     Pursuant to ERISA, the Agreement and the Policy, Cosmopolitan USA and Cosmopolitan Interior are required to timely submit current fringe benefit contributions and reports to the Funds.

117.     During the course of the instant action, the Funds may become aware of additional

contributions and/or delinquency charges that may become due and owing.  If Cosmopolitan USA

and/or Cosmopolitan Interior fail to pay the contributions and/or delinquency charges, as part of this

action, at the time of trial or judgment, whichever is later, those additional amounts should be included.

**WHEREFORE**, Plaintiffs respectfully pray for Judgment as follows:

On the First, Second and Sixth Claims for Relief against Cosmopolitan USA and Cosmopolitan
Interior:

(a) In the minimum sum of **$59,326.81** representing benefit fund contribution for the period
June 19, 2018 through to and including July 24, 2018, plus interest, liquidated damages,
attorneys' fees, court costs and disbursements.

On the Third Claim for Relief against Cosmopolitan USA and Cosmopolitan Interior:

(b) In the minimum sum of **$200,604.17** representing late charges for the period ending May
30, 2017 through to and including June 12, 2018 all in accordance with the Trade
Agreement and the policy for collection of delinquent contributions.

On the Fourth and Fifth Claims for Relief against Cosmopolitan USA and Cosmopolitan Interior:

(c) An Order requiring the Defendants to permit and fully cooperate in an audit of the
Defendants' books and records by the Plaintiffs or its agents.

(d) For a Judgment against the Defendants for any monies found due and owing as a result of
the audit of Defendants' books and records which shall include the principal amount due,
plus interest calculated at 2% percent above prime per annum from the date of the
delinquency, liquidated damages calculated at twenty (20%) percent of the principal
amount found due, reasonable attorneys' fees and the cost of the audit as provided for in
the Trade Agreement and/or Policy for Collection of Delinquent Contributions;

On the Seventh, Eighth, Ninth and Tenth Claims for Relief against Moshe Gold and Joel Friedman:

(e) In the minimum sum of **$59,326.81** representing benefit fund contribution for the period
June 19, 2018 through to and including July 24, 2018, plus interest, liquidated damages,
attorneys' fees, court costs and disbursements.

(f) In the minimum sum of **$200,604.17** representing late charges for the period ending May
30, 2017 through to and including June 12, 2018 all in accordance with the Trade
Agreement and the policy for collection of delinquent contributions

On the Eleventh Claim for Relief against all Defendants

(g) Damages in the amount of any additional contributions and/or delinquency charges which may become due and owing during the course of the instant action which amount shall include the principal plus interest and liquidated damages.

On all Claims for Relief:

(h) For such other and further relief as to the Court deems appropriate.

Dated:  Elmsford, New York
        March 7 2019

Respectfully submitted,

BARNES, IACCARINO &
SHEPHERD LLP

Dana L. Henke
Attorneys for Plaintiffs
258 Saw Mill River Road
Elmsford, New York 10523
(914) 592-1515